IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| v. | NO.   21-460 |
| ALFONZO RONELL WHITE | |

**Baylson, J.**                                                                                              **June 29, 2022**

### MEMORANDUM RE: MOTION TO SUPPRESS

The Defendant in this case, charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), filed a Motion to Suppress Evidence (ECF 14), and the Court held an evidentiary hearing on June 13, 2022. The sole witness called by the Government was Officer Nabil Assad, who was one of two officers who arrested Defendant on May 14, 2021. The other officer, Richard DiPaolo, has been injured on duty and was unavailable to testify. The Court does not see any need to withhold a decision on the Motion, because of this other officer being unavailable, and Defendant did not request a delay until the officer had recovered and could appear in Court.

The testimony by Officer Assad was fully credible. He recounted being on duty, in full uniform and a marked patrol car, with a partner, Officer DiPaolo, on May 14, 2021. They responded to a police radio call at approximately 12:15 p.m., that a crowd had gathered in the area of 1400 North Hobart Street in West Philadelphia. The radio call relayed a report that there was a crowd arguing and the caller heard mention of a gun, though did not see anyone with a gun. By the time Officers Assad and DiPaolo arrived on scene, the crowd had dispersed, and they continued to drive their patrol car without getting out of the car. Officer Assad testified that when he and his partner approached the crowd at the reported location, the crowd had largely dispersed, and there was no evidence of anyone with a gun.

Because of the tremendous incidence of gun violence in the Philadelphia area over the last several years, this call warranted immediate, thorough, and lawful police action. Approximately ninety minutes later, just to check on the situation, which the Court finds was lawful police work, Officer Assad and his partner drove to the same block of North Hobart Street. They saw an individual, who, upon observing their approaching police car, immediately put his right hand on the front of his right pants pocket, covering the pocket. The officers did not exit the vehicle, and instead continued driving.

The officers drove around the block, stopping at the corner of Master Street and North Hobart Street, where they were approached by an unidentified female from a nearby child daycare facility who expressed a concern ("something" was happening) about a crowd on the block that had been present most of the day. She expressed concern that the children in the daycare facility were about to be released to go home and asked the officers to stick around.

The officers turned onto North Hobart Street and saw the same male individual who had previously covered his pants pocket, again put his right hand in front of his right pants pocket. Officer Assad testified this created "reasonable suspicion" in his mind that the individual had a gun in his possession. Officer Assad and Officer DiPaolo therefore approached the individual on foot. Officer DiPaolo asked the individual to put his hands in the air, and Officer Assad verbally informed Officer DiPaolo that the individual may have a gun. At the time, the individual was holding a cell phone in his right hand. The individual placed his hands over his head, and Officer Assad put the individual in handcuffs. Officer Assad testified that he then used his hands to "pat down" the individual's right pants pocket, unzipping the pocket and recovering a firearm. Officer DiPaolo had also drawn his taser and was pointing it at the individual.

The events described by Officer Assad took place within a matter of seconds. The exact sequence of these events is not clear but is not material.

The Court finds that this situation is appropriately characterized as a lawful "stop and frisk" situation, where an experienced police officer, who has had multiple years of experience in this high crime neighborhood, acted appropriately in all respects and did not violate the Defendant's constitutional rights.

The Court finds that Officer Assad had "a reasonable suspicion," as a matter of law, to conduct the pat down.

The Supreme Court decision in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968) is important precedent justifying this "stop and frisk" police conduct which resulted in the arrest of the Defendant. Other subsequent cases have justified a "stop and frisk" based on an objectively reasonable test. <u>See Adams v. Williams</u>, 407 U.S. 143 (1972), <u>see also</u> <u>United States v. Arvizu</u>, 534 U.S. 266 (2002).

These cases emphasize that considerable latitude should be given to a police officer's experience patrolling in a specific neighborhood over a lengthy period, as here, and common sense when conducting patrols in a high crime neighborhood, including when those patrols result in stopping individuals for "pat downs" when a police officer has "reasonable suspicion." The Third Circuit has issued a number of opinions rejecting claims of unconstitutional Fourth Amendment violations in similar situations. <u>See</u> <u>United States v. Nelson</u>, 284 F.3d 472, 482 (3d Cir. 2002) (describing the Supreme Court's decision in <u>Arvizu</u> as follows: "In the Supreme Court's most recent pronouncement on the Fourth Amendment reasonable suspicion standard, it accorded great deference to the officer's knowledge of the nature and the nuances of the type of criminal activity that he had observed in his experience, almost to the point of permitting it to be the focal point of the analysis."); <u>United States v. Brown</u>, 159 F.3d 147, 149 (3d Cir. 1998) ("[A] police officer may conduct a warrantless stop and frisk if specific and articulable facts, together with all rational inferences, suggest that the suspect was involved in criminal activity."); <u>see also</u> <u>United States v. Goodrich</u>, 450 F.3d 552, 561 (3d Cir. 2006) (listing four factors that contribute to reasonable

3

suspicion: "(1) the reputation of the area in which the stop occurred for criminal activity; (2) the time of day; (3) the geographical and temporal proximity of the stop to the scene of the alleged crime; and (4) the number of persons in the area"); <u>Johnson v. Campbell</u>, 332 F.3d 199, 206 (3d Cir. 2003) ("The ultimate question is whether a reasonable, trained officer standing in [the officer's] shoes could articulate specific reasons justifying [the suspect's] detention.").

The Court rejects the Defendant's arguments that the Officer was under any obligation to ask the Defendant if he had a license or any other verbal inquiry before frisking the Defendant and finding a gun in his pocket.

The Court has reviewed the case law cited by the Defendant and finds that all the cases are distinguishable and finds that there is no Supreme Court or Third Circuit case dealing with any analogous facts in supporting the Defendant's contentions.  <u>See, e.g.</u>, Reply 4 (ECF 47) (citing <u>United States v. Lowe</u>, 791 F.3d 424 (3d Cir. 2015)).

O:\CRIMINAL DEPUTY (Lori)\ORDERS\21-460 Memo & Order Re Motion to Suppress.docx